First case, but I will mention that we have some traffic rules, and when you have two minutes a light comes on, and when the red light signals on the podium you ought to conclude your argument as quickly as possible. We are familiar with the briefs and record excerpts. We have not necessarily gone into the record, and therefore the extent you can give us record citations, those would be helpful. This first case is United States v. Scully, No. 17-50223. Mr. McCrum, you getting paid for this or are you working on the come? You only get paid if you win here? That's correct, Judge. You're perceptive. I am here. There's always the Criminal Justice Act. Yes, and I guess that's what we're here before the Court to talk about that. May it please the Court, Judge Jones and Judge King and Judge Elrod. Here we come to the issue of a post-conviction pre-sentencing, pre-judgment restraint of assets, and so we come to an intersection of two different interests on a different path. One is the defendant's government's right or interest to secure assets for the payment of restitution. Let me ask you a question because there's something, I don't know if this is working or not. I want to be clear on a post-trial, post-judgment denial of a motion to release money to pay appellate counsel, you, I guess. That's correct, Judge. So this is, we're actually looking at a, there's already, judgment was already entered in this case. Correct. And as I understand the law, which I may not, I miss it, there's a lien that arises under the federal law once the judgment is entered. So what you're basically saying is, you know, never mind that, never mind the creation of a lien on this property. And your argument, therefore, is based on not whatever may have happened at the beginning of this case, but something at the very end when you're talking about a post-trial, post-judgment motion to vacate, in effect, to vacate a lien that arose at judgment, right? Yes, Judge, but my argument is not a flippant one in that it doesn't matter if there's a lien. It rests in that intersection between a defendant's constitutional right versus that government interest and enforcement of a lien. The monies were restrained prior to the pending, we knew that an appeal was coming, obviously, from the trial. We didn't know at that point when he advanced me the funds and they were restrained months later by the government, we didn't know whether or not there would be an order of restitution or forfeiture. We felt those issues were arguable. There were two potential parties that were entitled to restitution. There was the IRS, because there were some tax counts, and there was a partner of the defendant who the government was alleging had lost millions of dollars. We felt we had, I felt we had, good arguments on both. Indeed, I won on the partner aspect of it. The court found at sentencing that the partner was not entitled to millions of dollars of restitution, wasn't entitled to any. I felt I had, I'm sorry, go ahead. Yes. This money was already in the trust account at the time the lien was obtained, correct? Yes, and it was all already in the trust account when they obtained the restraint order. And you're not, you're not contesting that they can have the money that's not used for the actual appeal cost, correct? Correct. The transcript and the attorney's fees and the fees which have a constitutional preeminence over their lien. That's exactly right. I made that clear in my motion, as well as in a motion to reconsider the order, that just as in the Luis case, the Supreme Court case, we're not asking for, that the government shouldn't have restrained all of his assets. Indeed, they have an interest of securing payment of funds prior to sentencing. So how do you explain Kaplan? How I explain it? It's a post-conviction forfeiture, right? Yes. No violation of the Sixth Amendment. That's right. I distinguish it the way that the Luis, Supreme Court did in Luis v. United States. Well, you can try, but we're bound by Kaplan until it's changed, right? Well, but it doesn't apply because the Kaplan case dealt with there was a taint. There was tainted assets. Well, but that's, I mean, again, it says what it says. I mean, after conviction, they're not your money anymore. Or as Judge King says, their money's subject to a lien. The restraint here... And that does not entail a Sixth Amendment consequence at that point. The fact that it was restrained pre-trial makes no difference. The didn't challenge that. So... The Luis court, I think, is very clear that you look at the character of the funds, not the timing of the lien. It doesn't say that you look at it for all purposes. It does purport to distinguish, but it also says everything in Luis is directed to pre-trial restraint of untainted assets. Right. But we're talking about post-trial restraint when you owe the government a bunch of money. Well, it was a pre-sentencing restraint. Well, now you're drawing a distinction, it seems to me, that is highly technical. Had you made this motion post-sentencing, you would lose under Kaplan, would you not? I submit that I wouldn't because it's untainted assets. And the Luis case says, is it your money, government, or is it my money, defendant? And in that sense, because it's untainted, Judge, because it's untainted, the government has a right to attach liens, to restrain assets prior to sentencing. The lien attaches after conviction. However, the law is clear that that is not an inviolate lien. It always takes subjects to other superior interests. So your position is that Luis expressly limited in Kaplan, Monsanto, and Cattegoggio, if not maybe expressly, but on the other two expressly, two situations about tainted funds, and that the big distinction is tainted versus untainted, and that Luis took the position that untainted retains a Sixth Amendment right. That's correct, Judge. All the way through. All the way through. And after judgment, it's all the lien on everything. No, Judge, it's not tainted. It's just subject to restraint or securing by the government. The tainted character of it is that it's important because the defendant never had a right to the funds because they are tainted assets. They were the proceeds of illegal activity. I understand that distinction, but I'm also, I'm using, you know, taint is not a highly specific legal proposition. So I'm just saying that the government, that according to the statute, plainly has a lien to this, covering these funds at the moment of judgment. No question it does. We're not arguing that it doesn't. How are you going to secure the government's interest? With funds. If you lose, if you lose, it's too bad, isn't it? Well, it's not too bad for me, but it's too bad for, it's too bad for the defendant because he's deprived of his constitutional right of counsel of choice. It's too bad for the judiciary because now it has to expend its funds. I'm on the CJA panel. I know those funds are limited. They're not very limited, don't you? That's a silly excuse. Is that what the Supreme Court said in the Luis case, specifically? That the funds are limited? Exactly. And so regardless of, the Supreme Court said that those were the reasons why they were one of the, for the policy reasons were Luis. Justice Breyer exactly said that, Judge. Don't you have some ethical obligation to continue representing a client? I do, Judge. And I will continue if that's what the court deems is appropriate. This court just last year, actually in 2012, addressed that very, very situation in Naranjo v. Thompson. And an attorney is an officer of the court. I'm duty bound to render service when required to do so by appointment. And so if the court appoints me, it's mandatory and I understand that. But as this court has held in that case, this power of mandatory appointment is to be used in the last, as a last resort. Judge Elrod, I think you authored that opinion in 2012. This power is a power of last resort. And it's inherent power of the court that must be used with great restraint and caution and only when there is no other option available, only in the rarest of cases. Here you have a defendant who has legitimate, untainted assets to pay for the attorney of his choice. And this is not one of those situations where there's, it calls upon the court to have to appoint someone. I will do it, Judge, if that's what you, but what the effect of that, Judge, if we lose this case, one of three things is going to happen. One of two things is going to happen. The defendant's going to be forced into indigency and going to have to get an appointed counsel of not his choice, or the court's going to mandatorily compel me to do it. Personally, it's not offensive to me. I think what's a greater concept here is the principle of whether the government can effectively, by doing this, eviscerate a person's effective right to counsel of choice on appeal. Because that's what it's doing here. If the government is given this right to come in and take all of its assets, tainted and untainted. How often does a criminal attorney withdraw an honor after, if he thinks the client has meritorious grounds for appeal, simply because he says, well, you can't pay me what I want to charge you, therefore I'm withdrawing? Quite often. I don't, but quite often. I have done many pro bono cases. It's not an issue of me doing pro bono. Is that defendant deprived of counsel of his choice? In that situation where an attorney withdraws, yes, he is deprived of his counsel of choice, and the Sixth Amendment guarantees that right. It's not just a right to counsel. This court, in United States v. Mason, also a case decided two years ago, or in 2012, authored also by Judge Elrod, said that the Sixth Amendment guarantees a criminal defendant the distinct right not only to representation of counsel, but representation by counsel of their choice, citing the Supreme Court case Powell v. Alabama. And so that is an inherent constitutional right by a defendant. And that's what I'm here for, Judge, not just so I can get paid. I'll do the appeal either way. That's not the issue. But what we're doing, if you decide against Mr. Scully in this case, is that you're giving the Department of Justice blank power to eviscerate a person's appellate right of counsel of choice. That's what's happening. That's the effectiveness of going with the government in this case. What about, did you talk about the, was it the Second Circuit? Yeah. Cattagio? Cattagio. This is the way I've done it, Judge, but I'm not sure. Cattagio, again, dealt with tainted assets. It's the same concept. It was forfeitable assets because they were tainted. This is... But my notes say the defendant deposited $536,000 that were untainted with the clerk of the district court after sentencing. Now, I could be wrong. And I could be wrong. It was my understanding it was forfeitable assets that the government was seeking to obtain. Isn't it pre-Luis? Pardon me? Yes. Cattagio is pre-Luis. That's right. Cattagio relied on Kaplan and Monsanto, which were clearly distinguished by the Supreme Court in Luis, as dealing with only, that theory was only dealing with tainted assets. Let me just, I mean, here's another problem about your arguments in Luis, it seems to me. We know that Justice Thomas writes his dissent premised on funds that are forfeitable upon conviction under the Sixth Amendment. It's a concurring opinion, Judge, not a dissent. Yes, fine. So you have Thomas with that view. You have Kennedy and Alito, of course, dissenting. They wouldn't have even allowed the defendant to have the benefit in this case in that case. And then you have Justice Kagan also saying she finds Monsanto troubling, which is a pretrial restraint. By implication, she doesn't find Kaplan problematic. And she also says there's a serious problem about this distinction between tainted and untainted assets. So basically, you have four members of this very court. For one thing, you're talking about a plurality opinion. For another thing, you're talking about four members of a court where you now have a fifth member who appears to be an originalist. So what you're saying is that Kaplan needs to be extended. So our opinion is either going to basically say Kaplan needs to be extended or Luis needs to be extended. Now, how would you bet on that? Well, first of all, Judge, I disagree respectfully with Judge Thomas being a part of the dissent. It was a concurring opinion. You're right. He fully agreed and was on board with the character of the funds being- No, no. I believe he went on the originalist view that the Sixth Amendment draws a distinction or the common law between pre-conviction and post-conviction. I'm out of time, but I'm going to look the halfway back. You can look at it. That's fine. I appreciate that. Thank you, Judge. Thank you, sir. I mean, you're earning your keep right now, right? I'm fighting for principles, Judge. I'm trying. Ms. Callahan. If it may please the court, this court should decline to extend Luis into an area not contemplated by those facts. Can you pull that microphone a little bit closer to you or at least so I- Yeah, there you go. Okay. This court should decline to extend Luis into an area not contemplated by these facts. The whole premise of the tainted versus untainted is not an issue here, and the reason it's not is forfeiture is not an issue here, although it was in the cases we've discussed, except for Cattagio. I don't understand that because Luis also talks about restitution specifically, and you made that argument in your brief. So it is not just a forfeiture case. It's a restitution and forfeiture case. But in forfeiture, funds will often be frozen in hopes of restoration under the forfeiture statutes. There's a whole different body of law that arises when a defendant has been convicted, but especially post-judgment. But you started your argument by distinguishing between restitution and forfeiture. Do you concede that Luis does not distinguish between restitution and forfeiture? Because it discusses both as having reasons to do this, to not keep the funds. But within the context of forfeiture. Because the statute had issued there— It says restitution also, and it says it's not fair to keep the money that might be owed on restitution, and they are specifically balancing the victims. They say, and we understand there may be victims, but we still balance this other way. Yes. But the fraud injunction statute that was issued in that case under 18 U.S.C. 1345 is specific to forfeiture. But the language in the case and the explanation for the reasoning applies to restitution specifically by its terms. It does mention restitution. I do agree with that. But the context of the case is a forfeiture case. That's not the situation in which we find ourselves today. And often people confuse the forfeiture with a post-judgment collection. There are two different sections in the United States Attorney's offices that do those collections. We're very aware of that. So the reason for that is the lien that arises when a defendant is sentenced, that is essentially spoken into existence when he is sentenced. Right. And they're not challenging that the lien can have a role to play, but they're saying that their Sixth Amendment right trumps the lien. And that's what they're saying because the lien applies to protect funds that may be due after sentencing so that they won't be dissipated in case they are due. And in fact, part of the funds were not due after the sentencing in this case because they were not found to be a proper restitution. But they were protecting the funds. But this comes in over that because it's a constitutional right. But they don't have a constitutional right to hire an attorney they cannot afford. But they could afford the attorney with the untainted funds at the time they hired the attorney. But the funds are not exempt and they're encumbered by a lien. But they're not tainted as tainted is understood. If they were encumbered by a lien of a bank, would the defendant be able to void that lien to the extent of his attorney's fees? No, because the bank can foreclose. And actually in this instance, the government has foreclosed on those proceeds. We have a final order of garnishment today that was entered on September 7th of 2017 and the funds now belong to the government. But that's irrelevant as to what the status of the funds was at the time that the court entered its order. Yes. And the timing of this is also critical. The defendant had been sentenced in November of 2015. Or let me back up. He had been convicted by jury in November of 2015. He was reset. His sentencing was reset five times. When we came in on July 7th of 2016, the defendant did not show, unbeknownst to the government. And so the sentencing could not be held on that day. It was at that point that the government sought its restraining order. And the reason for that is partly because there was a fear that the defendant would abscond. In the sentencing transcript by the court, he talks about the defendant's ability to sail across the seas to Thailand and being in the Coast Guard and so forth. So it wasn't as if the government restrained it just straight out of let's hold off for sentencing. It could. So it doesn't really matter whether they had a particularized interest in this defendant or not. Because the government had the right to restrain it right away. The court had the right to restrain it under the Homeward Act. To request the court to restrain it. And the court would have been fine even if the person was showing up perfectly, properly. I don't always find that to be the case. Often the courts won't restrain them. And we don't ask the court to restrain them if we don't have a fear that the defendant will dissipate them or abscond. We try to show restraint in that situation. Completely your own restraint or benevolence in that way. Our own restraint. Yes, Your Honor. With regard to the payment of these fees, if these fees had been paid immediately following the conviction, said, well, I'm going to appeal today, and instead have gone into the trust account and been transferred that day for the appeal, then you wouldn't have a right to them, right? Arguably, we would not have. I thought the lien exists automatically on conviction. It does. Well, no, the lien arises when the defendant is sentenced. Not the conviction. Now, the MVRA is already contemplated at the time of the conviction. And these cases do talk about the forfeiture statutes being relevant upon the time of conviction. So the lien didn't exist at the time of conviction? Correct. The lien arose the moment the defendant was sentenced. So there was no lien at the time the money existed and when they, in the trust account? Right. The lien did not arise. So at any time prior to sentencing, if they had gone ahead and paid the money to the attorney rather than kept it there and said, I'm transferring this to you, I think it's going to cost you $15,000, I don't know, you know, whatever it would be, here's the money for that, plus $25,000 for expenses and other things, for $10,000, then that would be fine. It would be a bitter pill to swallow for the United States. But I think if he entered into that agreement, he could do it. But that's the lesson for defendants who want to keep their lawyers who have money. Is that right? Yes. That's what they should do going forward? Yes. That is the lesson for them. The key component that continues to be missing the defendant's argument is that judgment lien. Although he's asking the court to find that there's a right to counsel in spite of the judgment lien, the judgment lien is critical because the government can foreclose on it any time after the defendant is sentenced. As a matter of fact, the government could have sought a writ of execution the day he was sentenced and taken the funds straight from his account. We have a number of remedies. The problem with that is, of course, the time delay and the remedies that occur. And that's the reason that we get the restraining order. We get it in order that we can seek the remedies from the court that we would. The other issue here that's been overlooked is the difference in the statutes that have been contemplated by the other case law. 18 U.S.C. 1345, which is the fraud injunction statute in Louise, but also 21 U.S.C. 853, which is the statute contemplated in both Monsanto and Kaplan, are not where we find ourselves today. Where we find ourselves today is the court's exercise of its power under the All Writs Act, which is 28 U.S.C. 1345. The court was exercising its power to enforce the judgment it would enter, and the defendant did not object prior to sentencing. I ask you to uphold the court's power in that situation. Do you concede that the trial court erred, the district court erred, in differentiating between the right to appellate counsel of your choice and trial counsel of your choice? That the trial court said, oh, well, that's not really as important of a right. That's not correct, is it? You don't want us to rely on that theory, do you? Yes, I think the court was correct. You're saying appellate counsel is not as important as a Sixth Amendment right as trial counsel? That's what the court said. What the court did was refer to Ross v. Moffitt, and what he said was, it's not the same interests at issue there. That's not accurate under the Sixth Amendment. Right to appellate counsel is just as important as right to trial counsel under the Sixth Amendment, isn't it? No, I would disagree. Really? Yes. Okay. Because it's not the same when we're looking pre-trial. The defendant is trying to defend themselves from the sword of the government instead of acting as a shield. That's what the court found, and I believe the court was absolutely correct in that respect. Now, if we were to take Justice Thomas's position in the case, we would not distinguish between tainted and untainted, right? Correct. And we would say that until the Sixth Amendment trumps any kind of lien, wouldn't we? No, we would not. Again, they're still looking pre-judgment, and Justice Thomas did talk about at the point of conviction, and that is, although the lien hasn't arisen at that point, what has happened is that there is contemplated there would be restitution. Remember, the Mandatory Victim Restitution Act mandates the court to enter restitution when it finds that there's a victim loss, and the court had that well in its mind at this stage here when it was preparing to sentence the defendant. As a matter of fact, when we walked in on July 7th of 2016, the court was prepared to sentence the defendant. The lien would have arisen at that date. Okay, it says trial and judgment, and the lien would not have arisen yet. Well, the lien would have arisen if he'd been sentenced on July 7th when he went in for sentencing that day but failed to appear. And Justice Thomas does talk about at conviction. And judgment. It says trial and judgment. Well, I think what he's doing is, look, he's not talking about the sentencing and the judgment, but the judgment of the jury. Well, he's talking about judgment. I think he means final judgment, doesn't he, when he's talking about at common law? Well, at common law, the judgment in a felony was basically death, so there wasn't much role for the jury or the judge to play in felony convictions at common law. I don't think he got into that degree of specificity. Nor would the government's lien have been an issue in that case either, because that is the distinction I'm trying to make between the forfeiture and the non-forfeiture aspect. There was no secured interest in that case. The government's lien had not arisen in that case. They're still operating under those forfeiture statutes, which are not an issue here. We're talking about the Mandatory Victim Restitution Act and the All Writs Act. We're not talking about tainted versus untainted. We're talking about non-exempt funds in this sense, because the defendant has a right to keep his exempt funds. So there are wages and other things that are exempt. He has the right to use those funds to pay his attorney, to the extent that he has them. But in this sense, he does not have them, apparently. Because he doesn't have them, he can't afford to hire the counsel. That's why he couldn't sell those homes in California, because they're underwater to the mortgage company, right? Yes, Your Honor. So if he had equity in those homes, he could have sold them and paid for an attorney. Or he could still sell them and try to cheat the banks. Who knows? Yes. One thing also missing from the argument is whether the defendant does indeed have that asset somewhere else. We're saying counsel's represented that he's indigent, but the fraud that occurred here occurred largely out of Thailand. And it occurred... Well, you didn't tell us much about that in the briefing. Yes. Well, so he was sentenced to 15 years, which is quite a lot in a fraud case. So what was the underlying... I'm sorry, I don't know what the underlying crime was. The underlying crime was a fraud wherein he was manufacturing records to hide kickbacks to himself, if you will. So in other words, he had a company called Gourmet Express. That company had partners. At least two of those partners, he and his nephew, were manufacturing invoices, sending them through middlemen, which are actually family members, inflating the invoices. So you're saying he was doing some kind of import scheme. Yes, Your Honor. In that sense. But you have not alleged... If there is a distinction between tainted and untainted, you have never alleged that this Florida property proceeds is tainted. Correct. It's non-exempt property. And then the proceeds from it are non-exempt. So that means that they're subject... Because you would have taken it already. Yes. Yeah. Yes. One other thing. Once the jury found Scully guilty, as the court found, the anticipated restitution was not nebulous or speculative at that point. And that is part of the issue in all the pretrial restraining order cases, which this case is not. This case is not pretrial. This case is not... Why wasn't it nebulous if part of it was not awarded? It was taken with the idea that it would be for the partners and also for the IRS. And then the court determined that the partners were not entitled to it. Because the partners received a judgment or they were paid outside of the court. Right. So why isn't it not known until after it's actually done at the sentencing? Why isn't it nebulous or what's the term? Speculative. Speculative until it actually occurs because you don't know whether or not the prerequisites will be satisfied until the sentencing actually takes place. Well, the amount of the loss to the IRS was known and the amount of the loss that could have been to the other partner was known, but it was paid. Right. But you don't know whether or not the court is going to award it. So why isn't it speculative until the court awards it? Well, it's... What's the standard for that? What case tells us that? Well, it's mandated by statute under 3663A in the Mandatory Victim Restitution Act. It's mandated that the court order it. And that is what the court wrote in its opinion. Because it's mandated, it doesn't have discretion anymore, but it's mandated that he order restitution to anyone who has suffered a loss. Right. But there's lots of litigation about who suffered loss and how to the extent of their loss. In fact, we've had two or three opinions in the past three months about if the person actually suffered the loss that's found in the sentencing where we reverse those. Correct. And those losses are based on what has happened. But in this case, it wasn't that that partner didn't suffer a loss. It was that the loss was already recompensed by the time he got to sentencing. The lien governs non-exempt assets. In other words, you could have a lien on non-exempt assets of $10 million even though the ultimate restitution awarded is $100,000, right? Yes. The lien is the lien. It's not dollar specific at its inception. Correct. What is the status of the challenge to the restitution and all of that with the actual appeal? The direct appeal is on hold. It's on hold here now. Pending the resolution of this issue. If the court has no further questions, I will surrender my time. Thank you. Thank you. Mr. McCrum. Thank you, Your Honor. Judge, I'd like to, I only have five minutes. I'd like to address quickly the Judge Thomas's concurrent. He says several things going to the original intent that I think the court has focused on that are very important. One, he says that the common law forfeiture tradition provides the limits of the Sixth Amendment guarantee. The tradition draws a clear line between tainted and untainted assets to freeze a defendant's potentially for forfeitable assets. And here it's focusing on advance of trial would eviscerate the Sixth Amendment's original meaning and purpose. Pre-trial. Still, it's a Sixth Amendment original. Well, then maybe the defense counsel who has access to a wealthy defendant ought to take a larger retainer in advance. I mean, isn't that exactly why that's done? Which one, Judge? That I don't take a bigger retainer? Yes, sir. To cover the cost of trial and appeal. And appeal. Well, I guess I could do that, Judge. But that's, that's, I'm not here to. There are many ways to skin this cat. I think that would be playing games with the government and with these concepts. And I'm not, I'm not here to do that. This has to do with. I know that. You're here to make some, you're here to extend Kaplan. We know that. I'm here to extend Luis, not Kaplan. I think Kaplan was rightly decided. But it's limited to tainted assets. And if we look at, at, again, Judge Thomas's language, it says that the Sixth Amendment protects, and the Sixth Amendment applies to appeal as well. And that's why this is, whether, whether Luis dealt with just pretrial, it's also post-conviction, post for appellate purposes, because the Sixth Amendment protects that. So it says here, as understood in 1791, Sixth Amendment protected a defendant's right to return, retain an attorney he could afford. It's thus no answer, as a principal dissent replies, that defendants rendered innocent by a pretrial asset freeze can resort to public defenders. The fact that he can get appointed counsel is of no answer in the context of a Sixth Amendment, whether it's pretrial or whether it's post-conviction, Judge. All right. Well, you and I. Because if it's just limited to pretrial, Judge, then we're saying that the Sixth Amendment counsel of choice doesn't apply to appellate. And that's not the case law. It's always applied to appellate situations as well. What you're basically saying is that only pretrial defendants- Let me just make a little point here. If you want $65,000 for the appeal, I'm sure you got paid extraordinarily well to try this case. And therefore, the fact that the lawyer has to continue his representation as an ethical matter doesn't really impress me too much. Because it is clear that under Luis, you were entitled to whatever you got, right? Judge, I do- The fact that this isn't personal to you, but the fact is- It sounds personal. Well, you've got a wealthy defendant here, and you were real lucky about that. Judge, he's now indigent. Well, he is now, as he ought to be, because he's a broadster. But my point is that counsel, he was not deprived of right to excellent counsel. You are the excellent counsel. Now, whether you happen to be able to bill by the hour or some percentage for this appeal is really not the issue. Because normally, you're not supposed to withdraw if the client wants you to continue on appeal. I mean, that's certainly true in the civil context. I have a minute left, Judge, if I may respond. Whether it's a wealthy client or reasonably middle-class client or someone on the lower class, what this opinion, if it goes in favor of the Department of Justice, will do is tell them that they can go and take all their assets and eviscerate a defendant's right to appellate counsel of choice, whether it's wealthy or not. Well, pre-Luis, they had more rights than that. Now, are you saying that is a power that was widely abused? I submit it is. And Luis is the law of the land. Luis indicates that the government should not be able to eviscerate this particular right. It undermines the appellate right of the Sixth Amendment counsel of choice. And so the defendant needs a portion of his untainted assets, which Justice Thomas, as well as the other judges of the majority, of the majority— Let me ask you the same question that I asked Ms. Callahan, and that is, if this right is so important, why couldn't he sell his properties on which the bank has a lien and pay you? He doesn't have any properties left. All he has is the house that— I'm talking in theoretical—okay, fine. But he did have a couple of houses, according to the briefs, and according to the briefs, there was no equity in those houses. If the right is so important, why can't he abridge the lien to the bank in the same way that you're saying he should be able to abridge the lien to the United States? You're bringing out a great point. It has to do with superior interests, and Luis' case talks about that. Who has a superior interest? Because everybody's got an interest, and does a bank lien on property have interest over a person's Sixth Amendment right? Does the government right to collect forfeiture have— So he ought to be able to abridge the bank's lien also. Is that what you're saying? No, I don't think you can. The law makes exception for that, but the law specifically says you can't do that. Here, the law says that a Sixth Amendment right to counsel a choice supersedes a government's right to take assets that will take away that constitutional right. That's just the law of the land, Judge. Well, that's what you want the law of the land to be. Well, I think with all due respect, otherwise it would violate the Sixth Amendment right to counsel a choice in appellate situations, and I just—I believe that would be error. I think we have your argument. Thank you, Your Honor. Have a great day.